Docket No. 03-10511

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff*
and

McKESSON CORPORATION,
*Intervenor-Appellant*

v.

CHARLES W. McCALL; JAY M. LAPINE,
*Defendants-Appellees*

FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

F I L E D

APR 3 0 2004

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

No. CR 00-0505 MJJ

ANSWERING BRIEF OF DEFENDANTS-APPELLEES
CHARLES W. McCALL AND JAY M. LAPINE

THEODORE V. WELLS, JR.
MOSES SILVERMAN
ALEX YOUNG K. OH
DAVID W. BROWN
FARRAH R. BERSE
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

MICHAEL J. SHEPARD (CSB #91281)
MICHAEL L. CHARLSON (CSB #122125)
HOWARD S. CARO (CSB #202082)
MICHAEL A. ZWIBELMAN
(CSB #224783)
HELLER EHRMAN WHITE &
McAULIFFE LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

*Attorneys for Defendant-Appellee Charles W. McCall*

TONY G. POWERS
KIMBERLY MYERS
ROGERS & HARDIN
299 Peachtree Street NE; Ste 2700
Atlanta, Georgia 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224

WILLIAM M. GOODMAN (CSB #61305)
TOPEL & GOODMAN
832 Sansome Street
Fourth Floor
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

*Attorneys for Defendant-Appellee Jay M. Lapine*

Docket No. 03-10511

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff*
and
McKESSON CORPORATION,
*Intervenor-Appellant*

v.

CHARLES W. McCALL; JAY M. LAPINE,
*Defendants-Appellees*

FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

No. CR 00-0505 MJJ

ANSWERING BRIEF OF DEFENDANTS-APPELLEES
CHARLES W. McCALL AND JAY M. LAPINE

THEODORE V. WELLS, JR.
MOSES SILVERMAN
ALEX YOUNG K. OH
DAVID W. BROWN
FARRAH R. BERSE
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

MICHAEL J. SHEPARD (CSB #91281)
MICHAEL L. CHARLSON (CSB #122125)
HOWARD S. CARO (CSB #202082)
MICHAEL A. ZWIBELMAN
(CSB #224783)
HELLER EHRMAN WHITE &
McAULIFFE LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

*Attorneys for Defendant-Appellee Charles W. McCall*

TONY G. POWERS
KIMBERLY MYERS
ROGERS & HARDIN
299 Peachtree Street NE; Ste 2700
Atlanta, Georgia 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224

WILLIAM M. GOODMAN (CSB #61305)
TOPEL & GOODMAN
832 Sansome Street
Fourth Floor
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

*Attorneys for Defendant-Appellee Jay M. Lapine*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF THE ISSUES ..................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

STATEMENT OF FACTS ............................................................................... 3

SUMMARY OF ARGUMENT ...................................................................... 12

STATEMENT OF REVIEW .......................................................................... 17

ARGUMENT ................................................................................................. 18

I.   The District Court's Ruling that the Government Must Disclose the
     Report and Interview Memoranda to Defendants Under *Brady* and
     Rule 16 Must Be Upheld ...................................................................... 18

     A.   Because the District Court's Determinations Regarding
          *Brady* and Rule 16 Have Not Been Appealed, No
          Effective Relief Can Be Granted to McKesson, and
          McKesson's Appeal Is Moot ....................................................... 18

     B.   The District Court Correctly Determined That the Report
          and Interview Memoranda Must Be Produced Pursuant to
          Rule 16 and *Brady* ..................................................................... 25

     C.   The Report and Interview Memoranda Must Be Produced
          Pursuant to *Brady* and Rule 16 Even if Privilege Attaches ..... 30

II.  Neither the Attorney-Client Privilege Nor Work Product Protection
     Shield the Report and Interview Memoranda from Disclosure .......... 34

# TABLE OF CONTENTS
(Continued)

**Page**

A.  The District Court Correctly Found That the
    Attorney-Client Privilege Does Not Attach to the Report
    and Interview Memoranda ........................................................ 35

    1.  The Communications at Issue Were Not Made in
        Confidence ....................................................................... 35

    2.  McKesson Did Not Have a Reasonable Expectation that
        the Report and Interview Memoranda Would Remain
        Confidential...................................................................... 37

B.  The District Court Correctly Found That Any Work
    Product Protection Was Waived When the Company
    Produced the Report and Interview Memoranda to the
    Government ............................................................................. 40

    1.  The "Common Interest" Exception Does Not Apply to
        McKesson's Disclosure to the Government .................. 41

    2.  McKesson's Conception of the "Common Interest"
        Exception Does Not Comport with the Underlying
        Rationale of Work Product Protection........................... 48

C.  State Courts – Including the California Courts – Have
    Held That the Report and Interview Memoranda Are Not
    Protected by Any Applicable Privilege..................................... 49

III.  The Ninth Circuit Should Reject the Selective Waiver Doctrine....... 52

    A.  The Selective Waiver Doctrine Is Inconsistent with
        Established Precedent................................................................ 53

        1.  The Selective Waiver Doctrine Has Been Consistently
            Rejected by the Federal Courts....................................... 53

        2.  Ninth Circuit Law Is Incompatible with the Selective
            Waiver Doctrine............................................................... 56

# TABLE OF CONTENTS
(Continued)

**Page**

B. Public Policy Does Not Support the Selective Waiver
Doctrine .................................................................................... 59

1. This Case Does Not Present a Suitable Opportunity for
the Court To Rule on Selective Waiver .......................... 60

2. McKesson's Cooperation with the Government
Undercuts the Argument That the Selective Waiver
Doctrine Is Necessary .................................................... 61

C. The District Court Would Have Benefited From
Admitting Evidence Relating To Public Policy ........................ 62

D. The Department of Justice Does Not Support or Rely on
the Selective Waiver Doctrine, Nor Is the Doctrine
Necessary to Obtain Cooperation from Corporations
Under Investigation ................................................................. 65

E. A Selective Waiver Exception Can Be Created Only by
Congress, Not by the Courts ................................................... 68

IV. CONCLUSION .................................................................................. 72

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page(s)**

*Analytica* v. *NPD Research*, 708 F.2d 1263 (7th Cir. 1983)......................... 21

*Biodiversity Legal Found.* v. *Badgley*, 309 F.3d 1166
(9th Cir. 2002) .................................................................................. 20

*Brady* v. *Maryland*, 373 U.S. 83 (1963)................................................*passim*

*Castleberry* v. *Crisp*, 414 F. Supp. 945 (N.D. Okla. 1976)........................... 32

*Collins* v. *City of San Diego*, 841 F.2d 337 (9th Cir. 1988)................... 25, 34

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
293 F.3d 289 (6th Cir. 2002), *cert. denied sub nom.*
*HCA, Inc.* v. *Tennessee Laborers Health & Welfare*
*Fund*, 124 S. Ct. 27 (Aug. 5, 2003)..............................................*passim*

*Cook Inlet Treaty Tribes* v. *Shalala*, 166 F.3d 986
(9th Cir. 1999) ............................................................................ 19, 24

*Davidowitz* v. *Delta Dental Plan of Calif., Inc.*,
946 F.2d 1476 (9th Cir. 1991).............................................................. 69

*Diamond* v. *Charles*, 476 U.S. 54 (1986)................................................ 20, 21

*Diversified Indus., Inc.* v. *Meredith*, 572 F.2d 596
(8th Cir. 1978) ............................................................................ 53, 56

*Entm't Research Group, Inc.* v. *Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir. 1997)............................................................... 34

*Fox* v. *Calif. Sierra Fin. Servs.*,
120 F.R.D. 520 (N.D. Cal. 1988) ......................................................... 59

*Genentech, Inc.* v. *United States Int'l Trade Comm'n*,
122 F.3d 1409 (Fed. Cir. 1997)............................................................. 53

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992)................... 18

*In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*,
406 F. Supp. 381 (S.D.N.Y. 1975)........................................................ 46

*Greenwood* v. *FAA*, 28 F.3d 971 (9th Cir. 1994) .......................................... 34

*Griffith* v. *Davis*, 161 F.R.D. 687 (C.D. Cal. 1995) ...................................... 58

*Hickman* v. *Taylor*, 329 U.S. 495 (1947).......................................... 40, 48, 54

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Jaffee* v. *Redmond*, 518 U.S. 1 (1996)............................................................. 51

*Kevlik* v. *Goldstein*, 724 F.2d 844 (1st Cir. 1984)........................................ 38

*Law Students Civil Rights Research Council, Inc.* v. *Wadmond*,
    401 U.S. 154 (1971) ............................................................................... 69

*In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988),
    *cert. denied*, 490 U.S. 1011 (1989) ....................................................... 53

*McMorgan & Co.* v. *First Calif. Mortgage Co.*,
    931 F. Supp. 703 (N.D. Cal. 1996)......................................... 41, 43, 58

*Mincey* v. *Head*, 206 F.3d 1106 (11th Cir. 2000).......................................... 31

*Native Vill. of Noatak* v. *Blatchford*, 38 F.3d 1505
    (9th Cir. 1994) ...................................................................................... 17

*Permian Corp.*, v. *United States*, 665 F.2d 1214
    (D.C. Cir. 1981).............................................................................. 53, 55

*Pub. Utils. Comm'n of the State of Calif.* v. *Fed. Energy
    Regulatory Comm.*, 100 F.3d 1451 (9th Cir. 1996)............................. 24

*Samuels* v. *Mitchell*, 155 F.R.D. 195 (N.D. Cal. 1994)................................. 45

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) ........................................ 61

*Sell* v. *United States*, 539 U.S. 166 (2003) .................................................... 21

*Seven Words LLC* v. *Network Solutions*, 260 F.3d 1089
    (9th Cir. 2001) ................................................................................. 24, 25

*State of Calif. Dep't of Social Servs.* v. *Thompson*,
    321 F.3d 835 (9th Cir. 2003) ................................................................ 21

*In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) .............. 41, 53, 61

*In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C. Cir. 1984)........... 40, 55

*Swidler & Berlin* v. *United States*, 524 U.S. 399 (1998)........................... 36

*Tennenbaum* v. *Deloitte & Touche*, 77 F.3d 337 (9th Cir. 1996).................. 51

*Tillman* v. *Ass'n of Apartment Owners of EWA Apartments*,
    234 F.3d 1087 (9th Cir. 2000).............................................................. 20

*Tower* v. *Glover*, 467 U.S. 914 (1984) ..................................................... 68, 69

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*United States ex rel. Burroughs* v. *DeNardi Corp.*,
    167 F.R.D. 680 (S.D. Cal. 1996)........................................................ 40

*United States ex rel. [Redacted]* v. *[Redacted]*,
    209 F.R.D. 475 (D. Utah 2001)........................................................... 31

*United States* v. *Alder Creek Water Co.*, 823 F.2d 343
    (9th Cir. 1987) ..................................................................................... 24

*United States* v. *Alvarez*, 358 F.3d 1194 (9th Cir. 2004) .............................. 17

*United States* v. *American Telephone and Telegraph Co.*,
    642 F.2d 1285 (D.C. Cir. 1980)..................................................... 41, 47

*United States* v. *Bergonzi*, 214 F.R.D. 563 (N.D. Cal. 2003)......................... 8

*United States* v. *Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003)................... 8, 10

*United States* v. *Chon*, 210 F.3d 990 (9th Cir. 2000) .................................... 17

*United States* v. *Cuthbertson*, 651 F.2d 189 (3d Cir. 1981).......................... 23

*United States* v. *Dekle*, 768 F.2d 1257 (11th Cir. 1985) ............................... 31

*United States* v. *DeMarco*, 407 F. Supp. 107 (C.D. Cal. 1975)................... 32

*United States* v. *Fernandez*, 231 F.3d 1240 (9th Cir. 2000)......................... 21

*United States* v. *Furrow*, 100 F. Supp. 2d 1170
    (C.D. Cal. 2000)................................................................................... 27

*United States* v. *Goldman*, 439 F. Supp. 337 (S.D.N.Y. 1977).................... 31

*United States v. Gonzalez-Rincon*, 36 F.3d 859 (9th Cir. 1994) .................. 17

*United States* v. *Lehman*, 792 F.2d 899 (9th Cir. 1986)................................ 17

*United States* v. *Martin*, 278 F.3d 988 (9th Cir. 2002).................................. 35

*United States* v. *Massachusetts Inst. of Tech.*, 129 F.3d 681
    (1st Cir. 1997).................................................................... 45, 53, 60, 62

*United States* v. *Michaels*, 796 F.2d 1112 (9th Cir. 1986)........................... 17

*United States* v. *Milikowsky*, 896 F. Supp. 1285
    (D. Conn. 1994)................................................................................... 27

*United States* v. *Moscony*, 927 F.2d 742 (3d Cir. 1991) ........................ 38, 39

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*United States* v. *NYNEX Corp.*, 781 F. Supp. 19 (D.D.C. 1991).................. 31

*United States* v. *Plache*, 913 F.2d 1375 (9th Cir. 1990)............................... 57

*United States* v. *Robinson*, 361 U.S. 220 (1960)........................................... 20

*United States* v. *Schaltenbrand*, 930 F.2d 1554 (11th Cir. 1991) ................ 39

*United States* v. *Shryock*, 342 F.3d 948 (9th Cir. 2003)............................... 17

*United States* v. *Strifler*, 851 F.2d 1197 (9th Cir. 1988) .............................. 17

*United States* v. *Sudikoff*, 36 F. Supp.2d 1196 (C.D. Cal. 1999) ..... 28, 35, 36

*United States* v. *Van Brandy*, 726 F.2d 548 (9th Cir. 1984) ........................ 27

*United States Parole Comm'n* v. *Geraghty*,
445 U.S. 388 (1980) ........................................................................... 19

*Upjohn Co.* v. *United States*, 449 U.S. 383 (1981) .................................. 40, 54

*Weil* v. *Investment/Indicators, Research & Mgmt, Inc.*,
647 F.2d 18 (9th Cir. 1981)........................................................... 57, 58

*Westinghouse Elec. Corp.* v. *Republic of the Philippines*,
951 F.2d 1414 (3d Cir. 1991)......................................................*passim*

*White* v. *Lee*, 227 F.3d 1214 (9th Cir. 2000)................................................. 20

## STATE CASES

*McKesson Corp.* v. *Green*, 2004 WL 415286
(Ga. Ct. App. Mar. 8, 2004)................................................................. 50

*McKesson HBOC, Inc.* v. *Sup. Ct. of San Francisco*,
2004 WL 318618 (Cal. Ct. App. Feb. 20, 2004)................... 50, 51, 69

*Saito* v. *McKesson HBOC, Inc.*, 2002 WL 31657622
(Del. Ch. Nov. 13, 2002) (unpublished)............................................. 51

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

### DOCKETED CASES

*United States* v. *Hawkins*, No. 04-CR-0106 (March 30, 2004) .............. 11, 43

### UNITED STATES CONSTITUTION

U.S. Const. Art. III, § 2, cl. 1 ........................................................................ 24

### FEDERAL STATUTES AND RULES

18 U.S.C. § 3500 .......................................................................................... 60

28 U.S.C. § 1291 .......................................................................................... 21

Fed. R. App. P. 3(a)(1) .................................................................................. 20

Fed. R. Crim. P. 6(e) ..................................................................................... 70

Fed. R. Crim. P. 16(a) .............................................................................. *passim*

U.S.S.G. § 8c2.5(g) ...................................................................................... 66

### MISCELLANEOUS

2 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 254.2 (2004 Supp.) ...................... 32

15A Charles Alan Wright, Arthur R. Miller & Edward H.
Cooper, *Federal Practice and Procedure* § 3902.1 ............................ 21

Local Circuit Rule 30-1.6 .............................................................................. 46

*SEC Statement in Support of Proposed § 24(d) of the Securities
and Exchange Act of 1934,* 16 Sec. Reg. & L. Rep. 461
· (Mar. 2, 1984) ..................................................................................... 70

Securities Fraud Deterrence and Investor Restitution Act of
2004, H.R. 2179, 108th Cong. (1st Sess. 2003) .................................. 70

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Judson W. Starr & Brian L. Flack, "The Government's*
*Insistence on a Waiver of Privilege," White Collar Crime*
2001 J-1 (ABA 2001) ......................................................................... 66

## STATEMENT OF THE ISSUES

1.  Whether this appeal by McKesson Corporation ("McKesson") is moot because neither McKesson nor the Government has challenged the District Court's determination that documents in the Government's possession are discoverable under *Brady* v. *Maryland*, 373 U.S. 83 (1963) and Rule 16 of the Federal Rules of Criminal Procedure.

2.  Whether documents prepared in an effort to obtain lenience from the Government rather than to provide legal advice or to prepare for litigation can be considered within the ambit of the attorney-client privilege or work product protection, and whether any such privilege or protection that may have attached to such documents is waived when they are disclosed to the Government.

3.  Whether the Ninth Circuit should, like seven other circuit courts of appeals, reject the discredited selective waiver doctrine, and hold that corporations cannot disclose privileged information to governmental investigators while withholding such information from all others.

## STATEMENT OF THE CASE

This appeal filed by intervenor McKesson Corporation

("McKesson" or "the Company"), Docket No. 03-10511, and the related

cross-appeals filed by defendants Charles W. McCall and Jay M. Lapine,

Docket Nos. 03-10524 and 03-10525, all arise from an order dated

September 12, 2003, issued by the United States District Court for the

Northern District of California in *United States* v. *Charles W. McCall and

Jay M. Lapine*, Case No. CR-00-0505-MJJ (the "Order").[1]  The Order

granted Mr. McCall's and Mr. Lapine's motions to compel the production of

certain evidence in the Government's possession that McKesson claimed

was protected from disclosure by the attorney-client privilege and work

product protection.[2]  The evidence at issue includes a report prepared by

Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") and memoranda of

interviews, including interviews of Messrs. McCall and Lapine, that

Skadden conducted in the course of its internal investigation of alleged

---

[1]  A copy of the Order is included in Intervenor-Appellant McKesson Corporation's Excerpts of Record ("ER") at page 345.

[2]  The Court also denied Messrs. McCall and Lapine's request for an evidentiary hearing to supplement the record with facts that would refute the purported public policy rationale for the claimed privilege. That denial is the subject of the related cross-appeals filed by Messrs. McCall and Lapine, Nos. 03-10524 and 03-10525, respectively. On December 22, 2003, the USAO moved to dismiss Mr. McCall's and Mr. Lapine's cross-appeals for lack of jurisdiction. As of February 6, 2004, this motion has been fully briefed and is pending before this Court.

accounting improprieties on behalf of the Audit Committee of the McKesson

Board of Directors (collectively, the "Report and Interview Memoranda").

The District Court correctly found that the Report and Interview Memoranda

must be disclosed to the defendants pursuant to *Brady* v. *Maryland*, 373 U.S.

83 (1963) and Rule 16 of the Federal Rules of Criminal Procedure. The

District Court also correctly determined that the attorney-client privilege did

not attach to the Report and Interview Memoranda at all, and that any work

product protection that may have applied was waived when McKesson

voluntarily disclosed such materials to the Government. McKesson filed a

notice of appeal of the Order. The Government has not filed a notice of

appeal.

## STATEMENT OF FACTS

On January 12, 1999, McKesson, a healthcare supply

management company, acquired HBO & Company ("HBOC"), a healthcare

software company, forming an entity named McKessonHBOC.[3]  *See* ER

256.

Defendant Charles W. McCall had joined HBOC in January

1991 as its chief executive officer ("CEO"); he became chairman of

HBOC's board of directors in February 1998. *See* ER 219. Following the

---

[3]  In this brief "McKesson" and "the Company" also refer to
McKessonHBOC.

3

merger between McKesson and HBOC, Mr. McCall became the chairman of the board of directors of McKesson. *See id.* Defendant Jay M. Lapine was an attorney for both HBOC and McKesson. *See id.* In 1997, Mr. Lapine became the general counsel of HBOC; after the merger between McKesson and HBOC, he became the general counsel of the McKesson subsidiary formerly known as HBOC. *See id.*

On April 28, 1999, McKesson restated its earnings and publicly disclosed that its auditors had discovered accounting irregularities. *See* ER 256. On the very day of the announcement, the Securities and Exchange Commission ("SEC") opened an inquiry into the matter, and private lawsuits alleging securities fraud began to be filed against the Company. *See id.* In response to these events, the Company's Board of Directors authorized the Audit Committee to review the circumstances surrounding the accounting irregularities and to make recommendations regarding the Company's accounting policies, procedures and controls. *See id.* The Audit Committee retained Skadden to conduct an internal investigation, and Skadden, in turn, retained the accounting firm PricewaterhouseCoopers ("PwC") to assist with the investigation. *See id.*

On May 10, 1999, Skadden and PwC met with SEC investigators. *See* ER 257. On May 27, 1999, the Company and the SEC

4

entered into a confidentiality agreement (the "SEC Agreement"), which stated that the Company was conducting an internal investigation that likely would culminate in a report to the Audit Committee and that the Company would provide this report to the SEC when it was complete. *See* ER 81. The SEC Agreement professes that the Company has a "common interest" with the SEC "in obtaining and analyzing information" relating to its restated financials. *Id.* The Company purported not to waive the attorney-client privilege or work product protection by providing the Report and Interview Memoranda to the SEC. *See id.* For its part, the SEC agreed not to argue that the Company's voluntary submission of the Report and Interview Memoranda constituted a waiver of any applicable privileges. *See id.*

Although the SEC agreed to keep the Report and Interview Memoranda confidential, the SEC Agreement specifically states that confidentiality would not be maintained "to the extent that the [SEC] determines that disclosure is otherwise required by federal law or in furtherance of the Commission's discharge of its duties and responsibilities." *Id.*

On May 28, 1999, the Company and the United States Attorney's Office for the Northern District of California (the "USAO")

5

entered into a separate confidentiality agreement (the "USAO Agreement").

The USAO Agreement states that "[b]ased on the information now known"

to the Government – prior to any investigation – the Company was not a

subject or target of the Government's investigation. ER 85. The USAO

Agreement also provides:

> The Company agrees that the [United States
> Attorney's] Office may use the [Report and
> Interview Memoranda], and any information or
> evidence derived directly or indirectly therefrom,
> in any criminal investigation or prosecution,
> including any prosecution of the Company. The
> Company agrees that the Office may use the
> [Report and Interview Memoranda] as it deems
> appropriate in furtherance of the investigation and
> any resulting prosecutions. In that regard, *the*
> *Company specifically consents to the disclosure of*
> *the [Report and Interview Memoranda] to a*
> *federal grand jury as the Office deems*
> *appropriate, and in any criminal prosecution that*
> *may result from the Office's investigation.*

ER 86 (emphasis added).

After these two agreements (collectively, the "Confidentiality

Agreements") were signed, Skadden and PwC proceeded with their internal

investigation of the Company, conducting 55 interviews of 37 employees –

including Mr. McCall and Mr. Lapine – and preparing interview memoranda

of each interview. *See* ER 257. On July 19, 1999, prior to receiving the

Report and Interview Memoranda, the SEC issued a Formal Order of

Investigation of the Company. *See* ER 37-39. According to the order, the

6

SEC was investigating whether "McKessonHBOC, its former and present officers, directors, employees" and others, both natural persons and corporate entities, had committed securities fraud. ER 37.

At the conclusion of its investigation, Skadden prepared its Report and presented the Report to the Company's Audit Committee on July 26, 1999. *See* ER 257-58. The next day, Skadden began producing the Report and Interview Memoranda to both the SEC and the USAO (collectively, the "Government"). *See* ER 258.

After the Audit Committee Report was completed, Skadden continued to conduct interviews of employees and prepare Interview Memoranda, and on November 19, 1999, the SEC and the Company entered into a supplemental confidentiality agreement covering those materials. *See* ER 77, 258.

The SEC's investigation of McKesson came to a head on June 29, 2001, when the staff of the SEC sent a "Wells Letter" to the Company, advising that the staff intended to seek authorization from the SEC to file charges against the Company. *See id.* Ultimately, the SEC informed the Company that it had closed its investigation without filing any charges against the Company. *See* ER 78.

On September 27, 2000, a grand jury convened in the Northern District of California returned an indictment charging defendants Albert Bergonzi and Jay Gilbertson with violations of the federal securities laws resulting from alleged fraudulent practices that caused the intentional misstatement of the reported financial results of HBOC and McKesson. *See* ER 256. On January 14, 2002, Messrs. Bergonzi and Gilbertson[4] filed a motion to compel the disclosure, under Federal Rule of Criminal Procedure 16 and *Brady* v. *Maryland*, 373 U.S. 83 (1963), of the Report and Interview Memoranda disclosed by McKesson to the Government. *See* ER 259. The USAO opposed the motion to compel on the grounds that the Report and Interview Memoranda were not required to be disclosed under Rule 16 or *Brady* and that the Report and Interview Memoranda were protected by the "work product privilege." ER 47, 59. In an opinion dated January 10, 2003, the District Court granted this motion to compel. *See United States* v. *Bergonzi*, 214 F.R.D. 563 (N.D. Cal. 2003).[5]

---

[4] Defendants Gilbertson and Bergonzi both subsequently pleaded guilty to various charges pursuant to cooperation agreements with the Government. *See* ER 208-16, 357-66.

[5] On August 5, 2003 the District Court issued a revised opinion that made minor changes to the January 10 opinion. *See United States* v. *Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003).

8

On June 3, 2003, a grand jury returned a Second Superseding Indictment (the "Indictment") charging, among others, Messrs. McCall and Lapine with additional alleged fraudulent activity. *See* ER 217-47. On July 21, 2003, Messrs. McCall and Lapine filed joinders to the motion to compel that had been filed by Messrs. Bergonzi and Gilbertson. *See* ER 248, 252. In addition to joining this motion to compel, Messrs. McCall and Lapine requested an evidentiary hearing in connection with the motion in order to supplement the record with additional facts that supported their position. *See id.*

McKesson was permitted to intervene in the criminal proceeding below.[6] The District Court allowed McKesson to oppose the motion to compel on the grounds that the Report and Interview Memoranda were protected from disclosure by the attorney-client privilege and the work product doctrine, and that the disclosure of the Report and Interview Memoranda to the Government did not waive such protection. *See* ER 258-59. McKesson's intervention motion did not address whether the Report and Interview Memoranda were materials within the ambit of *Brady* and Rule 16.

---

[6] McKesson had been permitted to intervene in the earlier motion to compel filed by defendants Bergonzi and Gilbertson. *See* ER 259.

9

On August 14, 2003, the District Court heard arguments on the
motion to compel. Thereafter, the District Court issued the Order, which
granted the motion to compel for the reasons previously stated in *United
States* v. *Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003). *See* ER 345-47. The
court found that the Report and Interview Memoranda: (1) were not
protected by the attorney-client privilege; (2) may have been protected by
the work product doctrine, but that such protection was waived when
McKesson disclosed the materials to the Government; and (3) were required
to be disclosed to defendants under *Brady* and Rule 16. *See* ER 260-75.

Messrs. McCall and Lapine also had requested an evidentiary
hearing in connection with the motion for the purpose of "supplement[ing]
the record with facts that will enable Defendant[s] to refute the public policy
rationale asserted by the Government and McKesson for recognizing the
'selective waiver' doctrine." ER 249. The court denied this request. *See*
ER 345-46.

The USAO did not file a notice of appeal from the Order.
McKesson appealed the court's findings on privilege and obtained a stay of
the Order pending appeal. *See* Docket No. 03-10511. Messrs. McCall and
Lapine filed notices of cross-appeal from the District Court's denial of their
request for an evidentiary hearing. *See* Docket Nos. 03-10524 and

10

03-10525, respectively. On December 22, 2003, the USAO moved to dismiss Mr. McCall's and Mr. Lapine's cross-appeals for lack of jurisdiction. As of February 6, 2004, this motion has been fully briefed and is pending before this Court.

On March 30, 2004, a grand jury in the Northern District of California returned an indictment against Richard Hawkins, the former Chief Financial Officer of McKesson. Hawkins was charged with committing securities fraud at McKesson during April 1999, after the merger with HBOC. *See United States* v. *Hawkins*, No. 04-CR-0106 (March 30, 2004).[7]

---

[7] Mr. McCall has separately requested that this Court take judicial notice of the indictment in *United States* v. *Hawkins*, No. 04-CR-0106 (March 30, 2004). *See* Docket No. 03-10511. The indictment is attached as Exhibit 1 to that request.

11

## SUMMARY OF ARGUMENT

The District Court correctly determined that Mr. McCall and Mr. Lapine have a constitutional right under *Brady* and a statutory right under Rule 16 to the production of the Report and the Interview Memoranda. Without these documents, which contain Mr. McCall's and Mr. Lapine's own statements, and possible exculpatory statements by many McKesson employees who may be witnesses for the government at trial, and which the District Court found were exculpatory materials under *Brady*, the defendants will be unable to mount an effective challenge to the charges against them in the Indictment. The Report and the Interview Memoranda are undeniably material to the defense because they apparently were the "roadmap" for the Government's criminal investigation. Accordingly, the District Court correctly found that *Brady* compelled production of both the Report and Interview Memoranda because these materials contain exculpatory information that is either admissible or reasonably likely to lead to admissible evidence. The District Court also properly determined that the Report and Interview Memoranda were discoverable under Rule 16 because they were "evidence which would be material to Defendants in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." ER 275.

12

The District Court's findings under *Brady* and Rule 16 have not been challenged by any party on this appeal. The Government has not challenged this holding – it has not filed a notice of appeal to oppose any part of the District Court's decision. McKesson, the appellant, only challenges the District Court's determinations on the attorney-client privilege and work product protection. McKesson makes no arguments in its brief regarding *Brady* or Rule 16. Accordingly, no effective relief from the constitutionally and statutorily required disclosure of the Report and Interview Memoranda can be granted to McKesson by this Court, which renders this appeal moot. This is because even assuming for the sake of argument that McKesson's privilege arguments prevailed, disclosure of the Report and Interview Memoranda would still be mandated under the District Court's unchallenged holdings on *Brady* and Rule 16.

Even if the Court were to find that this appeal is not moot, and addresses the question whether *Brady* and Rule 16 require the disclosure of the Report and Interview Memoranda regardless of privilege, this Court need not resolve this question in this appeal because McKesson expressly consented to the disclosure of the Report and Interview Memoranda in these circumstances in the Confidentiality Agreements. For example, in the Agreements, McKesson agreed that the Government could disclose the

13

documents in question as "required by federal law" and in "any criminal prosecution." ER 81, 86. These exceptions have no meaning if they do not apply to the instant case, where a District Court has ordered the production of the Report and Interview Memoranda to criminal defendants on constitutional and statutory grounds, and the Government has not appealed.

Therefore, defendants contend that this Court need not go beyond McKesson's inability to obtain any meaningful relief to resolve this appeal. Should the Court nevertheless reach the privilege issues in this case, however, the prevailing law requires this Court to reach the same conclusions as the District Court. That is, the attorney-client privilege did not attach to the Report and Interview Memoranda, and whatever work product protection, if any, that initially shielded those documents from discovery was waived by voluntary disclosure of the documents to the Government. Simply put, obtaining leniency from the Government during an investigation is not one of the purposes for which the attorney-client privilege or the work product doctrine has been recognized by courts.

McKesson's arguments are riddled with factual contradictions and inaccurate legal premises. For example, McKesson argues that disclosure of its work product to the Government did not lead to waiver because the Government was not its adversary and because it shared a

14

"common interest" with the Government in identifying alleged wrongdoers.
Neither the facts nor case law support this strange contention. The SEC staff
informed McKesson that the Company was being investigated for securities
fraud and subsequently sent a "Wells Letter" to the Company saying that it
intended to seek authorization to sue McKesson. Further, the USAO
Agreement specifically states that the information provided by McKesson
could be used in "any prosecution *of the Company*" – leaving no doubt that
the Government had reserved to itself the option of prosecuting the
Company. ER 86 (emphasis added). Therefore, the Government and
McKesson were classic adversaries. Although, like any corporation facing
criminal investigation and shareholder suits, McKesson had difficult choices
to make, it cannot be permitted to use the privilege both as a sword and a
shield to gain tactical advantage in litigation.

This Court should also refuse McKesson's invitation to adopt
the doctrine of selective waiver, which has been rejected by most of the
courts addressing the doctrine. Although McKesson asserts that selective
waiver must be permitted to encourage corporate cooperation with
governmental investigations, key policy memoranda issued by the
Department of Justice do not support this position. Further, to the extent that
such a "public policy" exception should be recognized, it must be created by

15

Congress, not by the courts. Indeed, legislation to establish the selective waiver doctrine with regard to the SEC alone has been proposed and is currently pending in the U.S. House of Representatives.

## STATEMENT OF REVIEW

The question whether McKesson's appeal is moot is a question of law in this Court. *See Native Vill. of Noatak* v. *Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994).

If this Court reaches the merits of the District Court's *Brady* and Rule 16 holdings, the standard of review is deferential. When a lower court makes a pre-trial determination, based on an *in camera* review, that *Brady* material must be produced, such determinations are reviewed for clear error. *See United States* v. *Shryock*, 342 F.3d 948, 983 (9th Cir. 2003); *United States* v. *Strifler*, 851 F.2d 1197, 1201-02 (9th Cir. 1988).[8]

Discovery rulings under Rule 16 are reviewed for abuse of discretion. *United States* v. *Gonzalez-Rincon*, 36 F.3d 859, 865 (9th Cir. 1994).

Whether the District Court's rulings regarding the attorney-client privilege and work product protection should be affirmed are

---

[8] This Court also has reviewed *Brady* rulings for abuse of discretion. *See United States* v. *Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004) ("We review discovery questions, including alleged *Brady* . . . rulings, for abuse of discretion."); *United States* v. *Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (reviewing *Brady* ruling for abuse of discretion). These cases, like *Shryock* and *Strifler*, are consistent with this Court's deference to the discovery rulings of lower courts in criminal cases. *See, e.g., United States* v. *Chon*, 210 F.3d 990, 994 (9th Cir. 2000). Such deference is not warranted, however, when a defendant challenges his conviction based on alleged violations of *Brady* and/or Rule 16. *See, e.g., United States* v. *Lehman*, 792 F.2d 899, 901 (9th Cir. 1986) (reviewing Brady materiality determination de novo on post-conviction appeal).

17

mixed questions of fact and law that receive *de novo* review. *See In re*

*Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

## ARGUMENT

### I. THE DISTRICT COURT'S RULING THAT THE GOVERNMENT MUST DISCLOSE THE REPORT AND INTERVIEW MEMORANDA TO DEFENDANTS UNDER *BRADY* AND RULE 16 MUST BE UPHELD

A. Because the District Court's Determinations Regarding *Brady* and Rule 16 Have Not Been Appealed, No Effective Relief Can Be Granted to McKesson, and McKesson's Appeal Is Moot

As a preliminary matter, the District Court's determination that

disclosure of the Report and Interview Memoranda is mandated under *Brady*

and Rule 16 is precisely the type of situation that is contemplated by the

exceptions contained in the Confidentiality Agreements between McKesson

and the Government. As the District Court emphasized, the Confidentiality

Agreements unequivocally state that the Government may disclose the

Report and Interview Memoranda under the circumstances here. The SEC

Agreement expressly provides that disclosure is permitted if "required by

federal law." ER 81. The terms of the USAO Agreement are even broader,

and it unambiguously declares that "the Company specifically consents to

the disclosure of the [Report and Interview Memoranda] . . . *in any criminal*

*prosecution* that may result from the Office's investigation." ER 86

(emphasis added).

It is difficult to conceive of a situation that is more in harmony with the broad disclosure exceptions in the Confidentiality Agreements than the situation here. The Confidentiality Agreements allow for use of the Report and Interview Memoranda in a criminal prosecution and for disclosure if required by federal law; this is a criminal prosecution and the District Court's decision includes an uncontested finding that the Report and Interview Memoranda are exculpatory materials to which Messrs. McCall and Lapine have a constitutional right.

Because the District Court's ruling that the Report and Interview Memoranda must be disclosed under *Brady* and Rule 16 has not been challenged, McKesson's appeal is moot, and this Court lacks jurisdiction under Article III to hear this case. "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes* v. *Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (quoting *United States Parole Comm'n* v. *Geraghty*, 445 U.S. 388, 397 (1980)) (internal quotation marks omitted). Although mootness and standing involve similar types of analysis under Article III, "if it is determined that Appellants had standing at the time this case was filed, 'mootness' rather than 'standing' becomes the proper

19

inquiry on appeal." *Biodiversity Legal Found.* v. *Badgley*, 309 F.3d 1166,
1171 n.6 (9th Cir. 2002) (citing *White* v. *Lee*, 227 F.3d 1214, 1243 (9th
Cir.2000)).

The USAO has not filed a notice of appeal from the District
Court's Order and does not purport to be an appellant, and therefore cannot
challenge any findings of the District Court. *See* ER 381-418 (Trial Court
Docket Sheet). "An appeal permitted by law as of right . . . may be taken
*only* by filing a notice of appeal . . . ." Fed. R. App. P. 3(a)(1) (emphasis
added); *see also Diamond* v. *Charles*, 476 U.S. 54, 63 (1986) ("To appear
before the Court as an appellant, a party must file a notice of appeal, the
statutory prerequisite to invoking this Court's jurisdiction."); *United States*
v. *Robinson,* 361 U.S. 220, 229 (1960) (holding that the period within which
a notice of appeal must be filed may not be enlarged and that filing within
that time period is "mandatory and jurisdictional"); *Tillman* v. *Ass'n of
Apartment Owners of EWA Apartments*, 234 F.3d 1087, 1089 (9th Cir. 2000)
(same). Accordingly, no jurisdictional basis exists for the USAO to raise
any challenge to the District Court's Order.[9] Therefore, the Government is
not a proper party to this appeal on any issue.

---

[9]  In any event, it appears that the USAO would have lacked statutory
authority had it sought to appeal the District Court's ruling concerning
*Brady* and Rule 16, since such a determination was not a final decision

Because the USAO has not appealed and McKesson wishes this

suit to continue, McKesson must now satisfy the jurisdictional requirements

of Article III on appeal even though it did not have to meet these

requirements to intervene below. *See Diamond*, 476 U.S. at 68 ("an

intervenor's right to continue a suit in the absence of the party on whose side

intervention was permitted is contingent upon a showing by the intervenor

that he fulfills the requirements of Art. III"); *State of Calif. Dep't of Social

Servs.* v. *Thompson*, 321 F.3d 835, 845-46 (9th Cir. 2003)

(plaintiff-intervenors who attempt to appeal a decision when the original

plaintiff, a governmental party, has not appealed must satisfy the

requirements of Article III on appeal, "even if they would not have been

proper parties at the outset"). Other courts have similarly held that a

non-party who wishes to appeal when no other party has appealed must meet

Article III standards. *See Analytica* v. *NPD Research*, 708 F.2d 1263, 1266

(7th Cir. 1983) (when district court disqualified law firm and client hired

new counsel and did not appeal the disqualification, law firm lacked

standing to appeal the disqualification on its own); *see also* 15A Charles

---

under 28 U.S.C. § 1291. *See United States* v. *Fernandez*, 231 F.3d 1240,
1244-45 (9th Cir. 2000). The District Court's ruling concerning *Brady*
and Rule 16 also does not fall within the collateral order doctrine, an
exception to the final order rule. *See generally Sell* v. *United States*, 539
U.S. 166 (2003).

21

Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3902.1 (2004 Supp.) ("A nonparty directly affected by an order also may be denied 'standing' if the court of appeals concludes that the effect will not be cured by reversal of the order, although the conclusion might as well be expressed in terms of mootness.").

   Although McKesson's opening brief discusses privilege issues at length (*see* Opening Brief of Intervenor-Appellant McKesson ("McKesson Br.") 27-60), it never challenges the District Court's critical holding that the Report and Interview Memoranda must be disclosed because they constitute *Brady* and Rule 16 material. Nowhere in its opening brief does McKesson make any substantive arguments concerning the application of *Brady* or Rule 16. McKesson merely requests that this Court limit the disclosure that is mandated pursuant to *Brady* and Rule 16.[10] *See* McKesson Br. at 60-63. McKesson has effectively conceded that the District Court's determinations concerning *Brady* and Rule 16 are correct. Indeed, McKesson conceded below that whether the Report and Interview Memoranda "in fact are discoverable under Rule 16 or *Brady* is a

---

[10] McKesson's argument that disclosure pursuant to *Brady* and Rule 16 should be made pursuant to a protective order is also moot. The District Court's Order already states: "Prior to production, the parties are to submit to the Court a protective order governing the production and use of the material ordered produced by this Order." ER 346.

determination to be made in the first instance by the government, and ultimately by the Court." ER 330. Consistent with this understanding of McKesson's role as an intervenor, the District Court allowed McKesson to intervene only to make the argument "that production of the [Report and Interview Memoranda] is precluded by its claim of attorney-client privilege and work product protection." ER 259. The District Court based its decision to grant McKesson's motion to intervene on *United States* v. *Cuthbertson*, 651 F.2d 189, 193 (3d Cir. 1981), which held only that "third part[ies] may intervene in a criminal trial to challenge production of subpoenaed documents on the ground of privilege," and not on any other grounds.

Because the District Court's holding with respect to *Brady* and Rule 16 has not been challenged on appeal, this Court lacks jurisdiction to grant the relief sought by McKesson. The essence of McKesson's arguments is that the District Court made erroneous determinations concerning whether the Report and Interview Memoranda were protected from disclosure by the work product doctrine or the attorney-client privilege. Reversing these findings would not prevent the Government from disclosing the Report and Interview Memoranda to Messrs. McCall and Lapine under

23

the terms of the Confidentiality Agreements pursuant to *Brady* and Rule 16, and McKesson makes no argument to the contrary on this appeal.

Put another way, this appeal is moot because even if the Court granted McKesson the very relief the Company seeks, the District Court's uncontested determination that the Report and Interview Memoranda are discoverable under *Brady* and Rule 16 would nonetheless compel the disclosure of those documents. "Unless [the Court] can grant effective relief, [the Court has] no jurisdiction to entertain the appeal and the appeal must be dismissed." *Cook Inlet Treaty Tribes*, 166 F.3d at 989 (citing *Pub. Utils. Comm'n of the State of Calif.* v. *Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996)); *see also United States* v. *Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries.").

McKesson's appeal effectively invites the Court to issue an advisory opinion on privilege issues. Article III courts have jurisdiction to decide only "actual 'Cases' or 'Controversies'" and uniformly refrain from issuing advisory opinions. *Seven Words LLC* v. *Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (quoting U.S. Const. art. III, § 2, cl. 1).

24

Finally, it is now too late for McKesson to cure the
jurisdictional defects in its appeal. McKesson failed to argue in its opening
brief that the District Court's holding concerning *Brady* and Rule 16 should
be reviewed, or to argue that this holding alone does not compel the
disclosure of the Report and Interview Memoranda. *See id.* at 1097
(reiterating "the longstanding rule that we do not consider arguments not
raised in the briefs"); *see also Collins* v. *City of San Diego*, 841 F.2d 337,
339 (9th Cir. 1988) (holding that claims not raised on appeal are considered
abandoned). In any event, McKesson would not have had standing to
challenge the District Court's determinations on *Brady* and Rule 16, because
the Company was permitted to intervene only on the privilege issues.

B.   The District Court Correctly Determined That the Report and
     Interview Memoranda Must Be Produced Pursuant to
     Rule 16 and *Brady*

Because the District Court's rulings on *Brady* and Rule 16
remain unchallenged, it is not necessary for the Court to address the merits
of these issues. However, the substance of the District Court's
determinations concerning *Brady* and Rule 16 is briefly discussed here in the
event that the Court finds it necessary to consider them. These issues are
also presented here because, on information and belief, the USAO is filing a

25

brief as an appellee in this matter, and it is not known which issues will be raised in that brief.[11]

The District Court held that the Report and Interview Memoranda are required to be produced under Rule 16 and *Brady*, and that such production was undoubtedly authorized by the exceptions in the Confidentiality Agreements. *See* ER 269-75. The District Court's holding was unremarkable in light of the USAO's significant concession that the Interview Memoranda contain information that must be produced under *Brady*. *See* ER 270-71. Once the USAO conceded this point, the only remaining question was the form of the disclosure. The USAO argued that, at most, it should produce summaries of the facts contained in the Report and Interview Memoranda that it deems material to the defense under Rule 16 or exculpatory under *Brady*. *See id.* McKesson attempts to resurrect these arguments here, although, as discussed in the previous section, the Company lacks standing to challenge any of the Court's determinations regarding *Brady* and Rule 16. In any event, the District Court rejected as

---

[11] It is unclear why the USAO considers itself to be an appellee, when it did not prevail on any issue below. Because the USAO is neither a proper appellant (for it did not file a notice of appeal), nor a proper appellee, it is difficult to see what possible stake the USAO has in this appeal. Accordingly, should the USAO raise new issues in its brief, Messrs. McCall and Lapine request that the Court permit them to file a motion to strike inappropriate portions of such a brief, or to submit a surreply to address such issues.

26

unpersuasive the claims that defendants were entitled to summaries only and

properly ordered the production of the Report and Interview Memoranda in

their entirety, *see* ER 270-71, and McKesson cannot establish that this aspect

of the District Court's ruling was clearly erroneous or an abuse of

discretion.[12]

---

[12]  McKesson cites *United States* v. *Van Brandy*, 726 F.2d 548, 551 (9th
Cir. 1984), *United States* v. *Milikowsky*, 896 F. Supp. 1285, 1308 (D.
Conn. 1994), and *United States* v. *Furrow*, 100 F. Supp. 2d 1170, 1178
(C.D. Cal. 2000), in support of its argument that only fragments or
summaries of the Report and Interview Memoranda should be produced
to Messrs. McCall and Lapine under *Brady*. See McKesson Br. 61.
These cases are factually inapposite. As a threshold matter, none of them
discuss a defendant's right to non-privileged documents of a third party
contained in the government's files. *Furrow*, 100 F. Supp. 2d at 1178,
deals with a defendant's right to the prosecution's analysis of *Brady*
material, not access to the *Brady* material itself. In *Van Brandy*, 726 F.2d
at 551, defendants claimed that their constitutional rights were violated
because the prosecution turned over only summaries of an FBI file on an
informant, which they claimed "may contain exculpatory facts . . . ." *Van
Brandy* was not a case where the court addressed the question whether
summaries or the underlying *Brady* material had to be disclosed; the
question before the court was whether the defendants were entitled to
more than summaries of an informant file, which they *believed* contained
*Brady* material. Similarly, in *Milikowsky*, 896 F. Supp. at 1308, after *in
camera* review of the prosecution's notes, the district court ruled that it
was satisfied with the disclosure that the prosecution had already made,
and to the extent that the court was unsatisfied, it ordered further
disclosure. None of these cases deal with the instant situation, where a
court, after *in camera* review, has determined that specific documents in
their entirety are *Brady* and Rule 16 materials. *See* ER 271, 275.
Further, McKesson does not even pretend to demonstrate exactly what
portions of the Report and Interview Memoranda should be withheld
from Messrs. McCall and Lapine under their approach; absent such a
showing, this Court has no basis to hold that the District Court abused its
discretion in holding that the *Brady* information must be disclosed in its
totality.

27

Under *Brady*, the government has a duty to disclose to a defendant, upon request, information that is favorable to the accused where the evidence is material to either guilt or punishment. *See Brady*, 373 U.S. at 1196-97. The District Court's finding regarding *Brady* is correct for two key reasons.

First, as the Government has admitted, the Report and Interview Memoranda were important as a "useful roadmap" in the investigation of alleged securities fraud. ER 271. Because these materials were prepared by Skadden in an effort to deflect blame from McKesson, it is certainly possible that they contain bias in favor of McKesson and against the individual officers ultimately indicted in this case. As the District Court found, "[t]he Report is not just a regurgitation of the interviews conducted by the Company." *Id.* The legal analysis and facts in the Report and Interview Memoranda ultimately became the basis for the Government's case, and the defendants are entitled to these materials to explore the biases in the findings and statements made by McKesson's counsel and employees.

Second, the District Court also correctly ordered production of the Report and Interview Memoranda because exculpatory information that is either admissible or reasonably likely to lead to admissible evidence is discoverable under *Brady*. *See id.* (citing *United States* v. *Sudikoff*, 36 F.

28

Supp. 2d 1196, 1200 (C.D. Cal. 1999)). The documents that defendants seek are likely to contain exculpatory information concerning "relevant financial and accounting decisions" and "bear[] directly on [defendants'] defenses of lack of criminal knowledge and intent." ER 270.

Similarly, under Rule 16, the Report and Interview Memoranda are material to the preparation of the defense in this case and must be provided to the defendants. *See* ER 275. The Report and Interview Memoranda are critical to the defense because they will play an important role in "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." ER 275. As the District Court explained, the materials include a description of the process by which contracts were prepared and reviewed before they were booked, and the Report details the magnitude of the accounting errors and places these errors in context for the purposes of evaluating potentially culpable parties. *See* ER 274. This information has proved invaluable to the Government, and is certainly material to the defense.

Further, to the extent McKesson argues that the Report and Interview Memoranda need not be produced in their entirety, it offers no factual basis for overturning the District Court's finding that the Report and Interview Memoranda are material under Rule 16. McKesson's claim that

29

"the Government need only provide Defendants with summaries of the facts the District Court deems material to the defense under Rule 16," McKesson Br. 61, blithely ignores the critical fact that the District Court already has "deemed material" the Report and Interview Memoranda in their entirety. McKesson has not pointed to any evidence in the record establishing the contrary, and the District Court's finding that the Report and Interview Memoranda are discoverable under Rule 16 should therefore be upheld.

C.   The Report and Interview Memoranda Must Be Produced Pursuant to *Brady* and Rule 16 Even if Privilege Attaches

The Court must affirm the District Court's Order even if it looks past the District Court's uncontested determinations concerning *Brady* and Rule 16 and addresses the underlying privilege and waiver issues. In that event, regardless of this Court's privilege ruling, the Report and Interview Memoranda must be disclosed to defendants for at least two reasons.

First, the Confidentiality Agreements plainly state that disclosure of these documents is permitted under exactly these circumstances. *See supra* at 17-18. That is, in the Agreements, McKesson expressly waived its right to prevent the Government from disclosing the Report and Interview Memoranda in a criminal prosecution pursuant to a court order.

30

Second, defendants' constitutional right to exculpatory material under *Brady* cannot be trumped by common law privilege interests. *Brady* holds that a defendant has a constitutional right under the Due Process Clause to obtain exculpatory evidence in the government's possession. *See Brady*, 373 U.S. at 87. Courts faced with the question whether the government's own work product protection must yield to a defendant's constitutional rights have "assumed that *Brady* requires disclosure." *Mincey* v. *Head*, 206 F.3d 1106, 1133 n.63 (11th Cir. 2000); *see also United States* v. *Dekle*, 768 F.2d 1257, 1263 (11th Cir. 1985) ("Some of those reports [of notes taken by government agents during interviews of witnesses] arguably contained material relevant to impeachment . . . and thus should have been disclosed pursuant to" *Brady*.); *United States ex rel. [Redacted]* v. *[Redacted]*, 209 F.R.D. 475, 481 (D. Utah 2001) (holding "that the *Brady* principle . . . overcomes work product protections"); *United States* v. *NYNEX Corp.*, 781 F. Supp. 19, 25 (D.D.C. 1991) ("The government should . . . disclose[] exculpatory facts, even if contained in internal documents otherwise protected by the work product privilege."); *United States* v. *Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) (noting that although internal government memoranda are not discoverable under Fed. R. Crim. P. 16(a)(2), "if the material be of a *Brady* nature, then it must be

31

produced"); *Castleberry* v. *Crisp*, 414 F.Supp 945, 953 (N.D. Okla. 1976)
("[T]he 'work product' discovery rule cannot, of course, be applied in a
manner which derogates a defendant's constitutional rights as propounded in
*Brady*."); *United States* v. *DeMarco*, 407 F. Supp. 107, 111 n.2 (C.D. Cal.
1975) ("The fact that government memoranda are not discoverable under
Rule 16(b) of the Federal Rules of Criminal Procedure cannot qualify the
government's responsibilities under *Brady*. The very purpose of *Brady* was
to make clear that the due process clause compels the production of material
not otherwise discoverable."); 2 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 254.2 (2004 Supp.) ("Because *Brady* is
based on the Constitution, it overrides court-made rules of procedure. Thus,
the work-product immunity for discovery in Rule 16(a)(2) prohibits
discovery under Rule 16 but it does not alter the prosecutor's duty to
disclose material that is within *Brady*.").

Here, the asserted protection or privilege belongs to a third
party who voluntarily disclosed the purported privileged materials to the
Government for the Government's use in criminal prosecutions.
Accordingly, the claimed privilege interests are even more attenuated in this
proceeding when compared to a criminal defendant's constitutional right to
due process. An assertion of privilege by a third party who has already

32

contractually agreed to consent to the production of the report, in any

criminal prosecution, should not interfere with the Government's

constitutional obligations to a criminal defendant whose liberty is at stake.

*Brady* rulings must necessarily "trump" any finding of attorney-client

privilege or work product protection, especially under the circumstances of

this case.

Indeed, McKesson does not argue on this appeal that the Report

and Interview Memoranda should not be disclosed to defendants pursuant to

*Brady* and Rule 16 even if they are found to be privileged.[13]  In the mere

four pages on *Brady* and Rule 16 found in McKesson's opening brief,

McKesson attempts only to set certain limitations on disclosure mandated by

*Brady* and Rule 16.[14]  As noted above at 25, arguments that are not raised in

---

[13]  McKesson made this argument in the proceedings below. In its brief to
the District Court, McKesson contended: "Even if the Court were to
determine that the Report and Interview Memoranda constitute Rule 16
or *Brady* material, McKesson's attorney-client privilege and its
attorneys' work product protection would protect these documents from
disclosure." ER 330. The District Court recognized that McKesson had
"argue[d] that its claim of privilege precludes promotion of documents
under either Rule 16 or *Brady*." ER 259. This argument is entirely
lacking from McKesson's opening brief in this appeal.

[14]  Similarly, in its "Statement of Issues," McKesson does not assert that the
Court should consider whether *Brady* material is not discoverable if
privilege attaches. McKesson instead defines the issues it raises on
appeal as (1) whether work product protection was waived; (2) whether
the Report and Interview Memoranda were privileged in the first
instance; and (3) whether disclosure made pursuant to *Brady* and Rule 16

33

an opening brief, but had been raised below, are considered abandoned. *See*

*Collins*, 841 F.2d at 339; *see also Entm't Research Group. Inc.* v. *Genesis*

*Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1997) ("We review only

issues which are argued specifically and distinctly in a party's opening brief.

We will not manufacture arguments for an appellant, and a bare assertion

does not preserve a claim, particularly when, as here, a host of other issues

are presented for review.") (quoting *Greenwood* v. *FAA,* 28 F.3d 971, 977

(9th Cir. 1994)). Accordingly, McKesson is now precluded from making

any argument that the dictates of *Brady* and Rule 16 must yield to privilege

concerns, aside from the request for a protective order, which the District

Court has already granted.

## II.    NEITHER THE ATTORNEY-CLIENT PRIVILEGE NOR WORK PRODUCT PROTECTION SHIELD THE REPORT AND INTERVIEW MEMORANDA FROM DISCLOSURE

Should this Court determine to reach the merits of the privilege

issues the District Court considered below, there is no basis for the Court to

reverse the District Court's holdings. The District Court correctly

determined that the Report and Interview Memoranda were not subject to the

attorney-client privilege, and to the extent they were protected by the work

---

"should be carefully circumscribed and subject to a protective order."
McKesson Br. 5-6.

34

product doctrine, such protection was waived when the materials were

produced to the Government.

A.   The District Court Correctly Found That the Attorney-Client
     Privilege Does Not Attach to the Report and Interview
     Memoranda

     1.   The Communications at Issue Were Not Made in
          Confidence

As a general rule, the attorney-client privilege does not attach to

communications that are not made in confidence. *See United States* v.

*Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The court below properly held

that a communication between a client and an attorney made for the purpose

of relaying that communication to the government is not "made in

confidence" and therefore not subject to the attorney-client privilege. ER

261. The District Court emphasized that the Confidentiality Agreements

"make clear that prior to preparation of the [Report and Interview

Memoranda], the Company agreed to disclose the documents to the

Government." *Id.* Accordingly, the communications between Skadden and

McKesson were never privileged.

The District Court properly relied on *United States* v. *Sudikoff*,

36 F. Supp.2d 1196, 1205 (C.D. Cal. 1999), where the court held "that a

client's communications of proposed testimony made with the intent that the

lawyer relay the communications to the government are not protected by the

lawyer-client privilege." On appeal, McKesson attempts to distinguish
*Sudikoff* on the facts, arguing that the "sole purpose of the attorney-client
communication [in *Sudikoff*] was to communicate the substance of the
proffer to the Government," whereas McKesson's purpose in
communicating with Skadden was to assist Skadden in providing legal
advice to the Audit committee. McKesson Br. 51.

In the first instance, *Sudikoff* did not find that the "sole
purpose" of the communication at issue was to transmit information to the
Government. The facts and circumstances of *Sudikoff* clearly suggest that
the witness was also seeking legal advice from his counsel regarding the
proffer. *See id.* at 1204-05. Moreover, much like the witness in *Sudikoff*,
McKesson communicated information to its counsel knowing, and in fact
desiring, that Skadden would relay those communications to the
Government in an effort to obtain leniency for the Company. Although this
goal may not have been the Company's "sole purpose" in communicating
with Skadden, it was a significant purpose.

McKesson's agreement to provide the Report and Interview
Memoranda to the Government before those documents were even created
also conflicts with the principles underlying the attorney-client privilege.
*See Swidler & Berlin* v. *United States*, 524 U.S. 399, 403 (1998) (The

36

attorney-client "privilege is intended to encourage full and frank communications between attorneys and their clients . . . .") (internal quotation marks omitted). McKesson blithely asserts the communications between the Company and Skadden "would have occurred whether or not the Government was to receive the communications." McKesson Br. 51-52. The District Court, however, understood that the fundamental nature of those communications was affected by McKesson's decision to disclose them to the Government. In that vein, the District Court noted that "[t]he Report [was] not just a regurgitation of the interviews." ER 271.

> 2.  McKesson Did Not Have a Reasonable Expectation that the Report and Interview Memoranda Would Remain Confidential

McKesson also argues that the Company had a reasonable expectation of confidentiality because of its "common interest" with the Government. *See* McKesson Br. 47. The argument that the Government and a company the Government is investigating on allegations of securities fraud can share a "common interest" is absurd on its face. McKesson's only interest in sharing the fruits of its internal investigation with the Government was in obtaining leniency and avoiding civil or criminal liability. The Government, on the other hand, was interested in finding and bringing to justice any wrongdoers – specifically including the Company. For example,

the SEC's July 19, 1999 Formal Order of Investigation stated that the Commission was investigating possible securities fraud by "McKessonHBOC" as well as by other persons and entities, including McKesson's "former and present officers, directors, employees." ER 37.

McKesson relies on *Kevlik* v. *Goldstein*, 724 F.2d 844 (1st Cir. 1984) to bolster its argument that the Company had a reasonable expectation of confidentiality under these circumstances. *See* McKesson Br. 47. That case is entirely inapposite. In *Kevlik*, the court found that the attorney-client privilege attached even though the plaintiff's father was present during an attorney consultation because both plaintiff and father reasonably intended for the consultation to be privileged. *See Kevlik*, 724 F.2d at 849. The rationale for this holding rests largely on the close relationship of trust between the plaintiff and the father – a relationship that made it reasonable for the plaintiff to expect that the communications would remain confidential. In McKesson's case, however, the Company effectively invited its classic adversaries – the Government investigators – to be present during Skadden's interviews with its employees. Consequently, the privilege never existed in the first place.[15]

---

[15] The two other cases on which McKesson relies for the reasonableness of its expectation of continued confidentiality are similarly inapposite, in part because they both involve mistake or misunderstanding. *See United*

McKesson also relies on the terms of the Confidentiality

Agreements to support its expectation of confidentiality. Those terms in fact

support the opposite conclusion, that McKesson did not have an expectation

of confidentiality. As the District Court pointed out, in the Confidentiality

Agreements, McKesson expressly authorized disclosure of the Report and

Interview Memoranda when "required by federal law or in furtherance of

[the SEC's] discharge of its duties and responsibilities," or "to a federal

grand jury . . . and in any criminal prosecution." ER 262. Because

McKesson placed its communications with counsel in the hands of the

Government and gave the investigators broad discretion to use those

communications as they saw fit, it was not reasonable for McKesson to

expect those communications to remain confidential, and certainly not in a

situation where there is a criminal prosecution and a court has found that

federal law (*i.e.*, *Brady* and Rule 16) require their production.

---

*States* v. *Moscony*, 927 F.2d 742, 752 (3d Cir. 1991); *United States* v. *Schaltenbrand*, 930 F.2d 1554, 1562-63 (11th Cir. 1991). *Moscony* involved witnesses who signed affidavits in the presence of the defendant, believing at the time that he was simply another witness in a similar position and with similar interests. 927 F.2d at 752. Here, by contrast, McKesson knew that the Report and Interview Memoranda would be provided to the Government. *Schaltenbrand* involved a military officer who approached a prosecuting Judge Advocate General ("JAG") for legal advice, misunderstanding the JAG's role. 930 F.2d at 1562-63. It is not clear how *Schaltenbrand* applies to the instant case because McKesson was under no such misapprehension. The Company knew at all relevant times that the Government was the investigative authority.

39

B.    The District Court Correctly Found That Any Work Product
Protection Was Waived When the Company Produced the
Report and Interview Memoranda to the Government

The work product doctrine protects from discovery materials

prepared by an attorney in anticipation of litigation. *See Hickman* v. *Taylor*,

329 U.S. 495, 510-11 (1947); *see also Upjohn Co.* v. *United States*, 449 U.S.

383, 397-402 (1981). Because the primary focus of the work product

doctrine is "to prevent a current or potential adversary in litigation from

gaining access to the fruits of counsel's investigative and analytical effort,

and strategies for developing and presenting the client's case," the analysis

of whether the work product protection has been waived revolves around

"whether the disclosures in issue increased the likelihood that a current or

potential opponent in the litigation would gain access to the documents in

question." *United States ex rel. Burroughs* v. *DeNardi Corp.*, 167 F.R.D.

680, 685 (S.D. Cal. 1996); *see also In re Subpoenas Duces Tecum*, 738 F.2d

1367, 1371-74 (D.C. Cir. 1984) (same).

The Company's disclosure of the Report and Interview

Memoranda to the Government constituted waiver of the work product

protection because the Government was McKesson's adversary or potential

opponent at the time of the disclosure. Moreover, the provisions of the

Confidentiality Agreements that expressly permit disclosure of the Report

40

and Interview Memoranda to other third parties at the Government's

discretion dramatically increased the likelihood that another adversary or

potential opponent would eventually gain access to the materials. This is

another reason why McKesson waived any work product protection that may

have attached to the Report and Interview Memoranda.

1.     The "Common Interest" Exception Does Not Apply to
       McKesson's Disclosure to the Government

Like the attorney-client privilege, work product protection is

not waived when materials within its ambit are disclosed to a party with a

common interest rather than to an adversary. *See McMorgan & Co.* v. *First*

*Calif. Mortgage Co.*, 931 F. Supp. 703, 709 (N.D. Cal. 1996) (citing *United*

*States* v. *American Telephone and Telegraph Co.*, 642 F.2d 1285, 1299)

(D.C. Cir. 1980) ("*AT&T*")). The core thesis of McKesson's argument on

appeal is that the Government was somehow not adverse to McKesson

because the Company, as the "largest victim" of the alleged accounting

improprieties, had a "common interest" in the investigation of alleged

securities fraud. McKesson Br. 23, 31-39. This understanding of "common

interest" comports with neither the law nor the facts.

To be sure, in April 1999 McKesson had "difficult choices" to

make because it was "facing a federal investigation and . . . civil fraud

suit[s]." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

41

McKesson, however, did not find itself in a unique situation; these difficult choices are faced by many corporations that discover possible illegal conduct. The notion that McKesson was eager to "cooperate with the Government . . . to investigate and remediate the wrongdoing" voluntarily is disingenuous. McKesson Br. 26. McKesson was negotiating disclosure of the Report and Interview Memoranda as part of a multi-faceted defense strategy to fend off criminal, civil and financial liability after it restated its earnings. The difficult choices McKesson faced do not give the Company license to employ the work product protection both as a sword and a shield.

McKesson argues strenuously that it entered into the Confidentiality Agreements and cooperated with the Government because it was simply a victim of alleged wrongful acts that took place at HBOC. To support this argument, McKesson insinuates that the alleged wrongdoing occurred only *prior* to the McKesson-HBOC merger on January 12, 1999. *See, e.g.,* McKesson Br. 39. These claims are unpersuasive for at least two reasons. First, the SEC specifically informed McKesson prior to receiving the Report and Interview Memoranda that the Company itself – not just its subsidiary, HBOC – was under investigation. Indeed, the USAO has since alleged that defendants participated in a criminal conspiracy to commit securities fraud from "[b]etween approximately December 1997 and

42

April 27, 1999" – that is, *post*-merger. ER 220. On March 30, 2004, a
grand jury indicted Richard Hawkins, the Chief Financial Officer of
McKesson both before and after the merger, for alleged criminal activity
during April 1999. *See United States* v. *Hawkins*, No. 04-CR-0106
(March 30, 2004). The charges in the indictment against Mr. Hawkins relate
to his conduct in the first quarter of 1999, after McKesson acquired HBOC.
*See id.* at ¶ 11. The indictment alleges that he participated in a fraudulent
scheme with other former McKesson officers to artificially inflate the
company's financial results for the fiscal quarter ended March 31, 1999. *See
id.* at ¶¶ 12, 37-39. Plainly, the Government considered as potential criminal
conduct activities that occurred at McKesson, and not just at its subsidiary,
HBOC. Second, before Skadden began its investigation, there was no basis
for McKesson to believe that accounting irregularities had not occurred at
the Company after the merger.

Thus, the notion that the Government had a "common interest"
with McKesson is simply false. The Government stood in the shoes of an
adversary for McKesson at all times. *See McMorgan*, 931 F. Supp. at 709.
In *McMorgan*, the disclosing party shared work product with the Department
of Labor ("DOL") in connection with the DOL's investigation of potential
violations of the Employee Retirement Income Security Act. McKesson

43